DISABILITY RIGHTS LEGAL CENTER
 Anna Rivera (SBN 239601)
 *Anna.Rivera@drlcenter.org*
246 Occidental Blvd., Suite B
Los Angeles CA 90057
Telephone: (213) 736-1496
Facsimile:  (213) 736-1428

BRANCART & BRANCART
 Christopher Brancart (SBN 128475)
 *cbrancart@brancart.com*
 Elizabeth Brancart (SBN 122092)
 *ebrancart@brancart.com*
P.O. Box 686
Pescadero, CA  94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO GOMEZ,<br><br>    **Plaintiff,**<br><br>    **vs.**<br><br>QUICKEN LOANS, INC.,<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Case No.  CV 12-10456 RGK (GJSx)**<br><br>**SECOND AMENDED COMPLAINT FOLLOWING REMAND; DEMAND FOR JURY TRIAL** |

## I.  INTRODUCTION[1]

1.    Plaintiff Ricardo Gomez, a person with a disability receiving public

---

[1]On November 2, 2015, the United States Court of Appeals for the Ninth Circuit issued a memorandum decision holding that the first amended complaint (ECF 14) stated a claim for disparate treatment and that plaintiff should be granted leave to amend to replead his disparate impact claim.  (ECF ECF 50.)  This second amended complaint tracks the first amended complaint, but adds new paragraphs 25-29 restating the disparate impact claim.

assistance, sues defendant Quicken Loans, Inc. for discrimination because of disability in violation of the federal Fair Housing Act and other federal and state laws.  Quicken, a residential lender, injures loan applicants with disabilities by committing discriminatory housing practices because of disability and discriminatory lending practices because of source of income, including receipt of public assistance.  Quicken's discriminatory practices explicitly discriminate against persons with disabilities, in general, and persons with disabilities based on their source of income, in particular; accordingly, Quicken is liable for violation of the federal and state fair housing and lending laws under either a direct evidence or disparate treatment theory.  In addition, to the extent that Quicken's policies are deemed to be facially neutral, Quicken is liable under a disparate impact theory because its practices have a discriminatory effect that actually or predictably results in a disparate impact on a group of persons, including plaintiff Ricardo Gomez, because of disability or source of income or both.

## II.  JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction to hear and determine plaintiff's state law claims because they are related to plaintiff's federal claims and arise out of a common nucleus of operative fact.  Plaintiff's state and federal claims form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in the Western Division of the Central District of California under 28 U.S.C. § 1391(b)(2) because all of the acts or omissions giving rise to these claims occurred within the County of Los Angeles.

## III.  PARTIES

4.     Plaintiff Ricardo Gomez has a physical impairment that substantially limits his major life activities, including working.  Accordingly, Gomez is a person with a disability or "handicap" under the Fair Housing Act (FHA), 42 U.S.C. §

3602(h), the California Fair Employment and Housing Act (FEHA), Government Code §§ 12926, 12926.1, and the Unruh Civil Rights Act (Unruh Act), Civil Code § 51(e)(1).  Since 1990, he has received Social Security Disability Income (SSDI) because of his disability.  Accordingly, part of Gomez's income derives from a public assistance program within the meaning of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a).  Gomez applied for loans from Quicken to refinance his Los Angeles home, a dwelling within the meaning of the FHA, 42 U.S.C. § 3602(b), and a housing accommodation within the meaning of FEHA, Government Code § 12927(d).  Gomez is an applicant for purposes of the ECOA, 15 U.S.C. §§ 1691(a), 1691a.

5.     Defendant Quicken Loans, Inc. makes loans for purchasing, constructing, improving, repairing and maintaining dwellings.  It engages in residential real estate-related transactions within the meaning of the FHA, 42 U.S.C. § 3605(b), and FEHA, Government Code § 12955(i).  Quicken is a creditor under the ECOA, 15 U.S.C. §§ 1691(a), 1691a(e), and a business establishment under the Unruh Act, Civil Code § 51(b).

6.     Each of the discriminatory housing or unlawful lending practices alleged in this first amended complaint were committed by Quicken's employees or agents acting within the scope of their employment or authority.

## IV.  FACTS

### A.  INTRODUCTION

7.     Quicken engages in a pattern or practice of discrimination against persons with disabilities and persons with disabilities who derive income from public assistance programs.  Quicken pursues this pattern or practice for the purpose or with the effect of discriminating against persons with disabilities and persons with disabilities who derive income from public assistance programs based on their disability or source of income, including receipt of public assistance income, or both.  Its pattern or practice of discrimination has been continuous

1    since at least January 1, 2010; accordingly, it constitutes a continuing violation of

2    federal and state fair housing and lending laws.

3          8.    Pursuant to its pattern or practice of discrimination, Quicken has

4    committed the following discriminatory housing or unlawful lending practices:

5                     a.    Discriminating against persons with disabilities who

6                           derive income from a public assistance program in its credit

7                           transactions;

8                     b.    Discouraging – through oral and written statements –

9                           persons with disabilities who derive income from public

10                          assistance programs from making or pursuing an application

11                          for credit;

12                    c.    Expressing to prospective mortgage loan borrowers a

13                          limitation based on disability or source of income or both;

14                    d.    Inquiring into whether an applicant has a disability, and

15                          the nature, severity, and duration of that disability;

16                    e.    Using different qualification criteria or applications, or

17                          lending standards or procedures, such as income standards,

18                          application requirements, credit analysis, or loan approval

19                          procedures or standards because of disability or source of

20                          income or both;

21                    f.    Imposing different terms or conditions for the

22                          availability of mortgage loans based on disability or source of

23                          income or both;

24                    g.    Using different policies, practices, or procedures in

25                          evaluating or in determining creditworthiness of any person

26                          based on disability or source of income or both;

27                    h.    Determining the terms or conditions for a mortgage loan

28                          based on disability or source of income or both; and,

-4-

i.     Providing mortgage loans in a manner that results in
disparities in their terms and conditions or that has the effect of
denying or discouraging receipt of mortgage loans.

9.     Quicken injured Gomez by committing each of these unlawful
housing practices and discriminatory acts listed in paragraph 8 above.
Accordingly, Gomez is an aggrieved person within the meaning of the FHA, 42
U.S.C. § 3602(i), the California FEHA, Government Code § 12927(g), and the
Unruh Act, Civil Code § 52.

## B.   RICARDO GOMEZ

### 1.   March 2010 Loan

10.    In February 2010, Gomez applied to Quicken for a mortgage loan
secured by his dwelling.  Gomez provided Quicken with an application,
supported by documents and information, showing his qualification for the loan.

11.    Because Gomez is disabled and derives part of his income from SSDI,
Quicken refused to lend to Gomez, unless Gomez provided Quicken with medical
proof of his current and future disability.  Gomez objected, stating that Quicken's
request violated his right to medical privacy.  Quicken replied that it would not
provide the loan for which Gomez was otherwise qualified unless Gomez obtained
and provided to Quicken a proof of Gomez's disability.

12.    Gomez objected to Quicken's demand for a disclosure of his medical
information as a term and condition of obtaining a loan.  Quicken forced Gomez to
decide:   acquiesce to violation of his fair lending rights and obtain a loan or refuse
and not obtain the loan.  To obtain the loan, Gomez contacted his medical doctor,
obtained a letter from his doctor, dated February 24, 2010, regarding his disability,
and provided that letter to Quicken.

13.    Having compelled Gomez to comply with its unlawful terms and
conditions, Quicken provided Gomez with a loan on March 23, 2010.

//

### *2.  August 2010 Loan*

14.     The Quicken loan obtained by Gomez is part of Quicken's rate-drop program.  Under that program, Quicken contacts its borrowers, offering to refinance their loan if there is a drop in interest rates.  Pursuant to that program, Quicken contacted Gomez in July 2010, inviting him to refinance his loan at a lower rate.  Gomez applied, providing Quicken with documents and information, showing his qualification for the loan.

15.     In response to that application, Quicken acknowledged that Gomez had previously complied with its demand that he obtain and provide to Quicken a letter from his medical doctor regarding Gomez's disability.  Having already compelled Gomez to comply with its unlawful terms and conditions, Quicken provided Gomez with a loan on August 20, 2010.

### *3.  September 2011 Loan*

16.     Quicken contacted Gomez in July 2011, inviting him to refinance his loan at a lower rate.  Gomez applied, providing Quicken with documents and information, showing his qualification for the loan.

17.     In response to that application, Quicken stated that, because of Gomez's disability, disclosure of medical information regarding Gomez's disability was a term and condition to obtaining the loan.

18.     To obtain the loan, Gomez provided Quicken with a copy of the letter from his medical doctor, dated February 24, 2010, which Quicken accepted as compliance with its unlawful terms and condition for obtaining a loan.  Quicken provided Gomez with a loan on September 16, 2011.

### *4.  August 2012 Loan*

19.     Quicken contacted Gomez in July 2012, inviting him to refinance his loan at a lower rate.  Gomez applied, providing Quicken with documents and information, showing his qualification for the loan.

20.     In response to that application, Quicken stated that, because of

Gomez's disability, disclosure of medical information regarding Gomez's disability was a term and condition of the loan.  Gomez objected to Quicken's demand for disclosure of his medical information.  Nonetheless, Quicken forced Gomez to decide:  Acquiesce to violation of his fair lending rights and obtain a loan or refuse and not obtain the loan.  To comply with Quicken's unlawful terms and conditions, Gomez transmitted to Quicken a copy of his doctor's letter, dated February 24, 2010.

21.     Quicken rejected that letter, demanding that Gomez provide Quicken with updated medical information regarding his disability.  Gomez objected, advising Quicken that its practice was unlawful and discriminatory.  Nonetheless, again Quicken forced Gomez to decide:  acquiesce to violation of his fair lending rights and obtain a loan or refuse and not obtain the loan.

22.     Gomez contacted his medical doctor, obtained a letter, dated July 25, 2012, from his doctor regarding his disability and, under protest, provided that letter to Quicken.

23.     Having compelled Gomez to comply with its unlawful terms and conditions, Quicken provided Gomez with a loan on August 7, 2012.

**C.  QUICKEN'S POLICY OR PRACTICE:  INTENT AND EFFECT**

24.     On its face and as applied to Gomez, Quicken's practice to require, as a term or condition of obtaining a loan, that persons with disabilities who derive income from disability benefits, including public assistance, disclose medical information about their disability, violates federal and state fair lending laws under the direct evidence and disparate treatment theories of discrimination.

25.     In the alternative, if Quicken's practice is not outwardly discriminatory, then it may be construed as an outwardly neutral practice applying a uniform standard of assessing creditworthiness based on income verification that actually or predictably results in a significantly adverse or disproportionate impact on persons with disabilities who derive income from disability benefits, including

public assistance.  Under this view,  Quicken's practice violates federal and state fair lending laws under the disparate impact theory of discrimination.

26.    Quicken's outwardly neutral practice is to request income verification from all potential borrowers as part of its underwriting process.   But the application of Quicken's outwardly neutral income verification practice to persons with disabilities relying on disability income subjects them to significant burdens that are not placed on persons without disabilities who do not rely on disability income.  In other words, Quicken's outwardly neutral creditworthiness criteria produces a significantly adverse or disproportionate impact on persons with disabilities relying on disability income.

27.    For example, borrowers relying on employment income to qualify for a loan may satisfy Quicken's income verification standard by providing Quicken with pay stubs and W-2 forms.  Similarly, borrowers relying on alimony or child support income payments to qualify for a loan may satisfy Quicken's income verification standard by providing Quicken with a copy of their divorce decree or court order.  Borrowers relying on retirement income to qualify for a loan may satisfy Quicken's income verification standard by providing Quicken with award letters and W-2s.

28.    In contrast, this same outwardly neutral income verification practice adversely and disproportionately burdens borrowers, like Gomez, who rely on disability-related income.  Quicken's neutral income verification practice requires those borrowers to provide sensitive medical information and/or to suffer embarrassment by having to contact their medical providers and obtain what is, in essence, a medical opinion letter verifying the current and future disability status of the borrower.  Although Quicken's income verification practice is outwardly neutral and uniformly applied to all borrowers, Gomez and a population of similarly situated borrowers with disabilities relying on disability income suffer a disproportionately negative impact when that neutral rule is applied to them.

29.     One way in which Quicken implements its outwardly neutral practice assessing creditworthiness is through its business rules management system. Based on investigation, plaintiff alleges that Quicken uses an automatic underwriting platform to determine whether an application, including Gomez's loan application, qualifies for a mortgage loan.  Quicken's automatic underwriting platform deploys an Integrated Rules Based Automated Underwriting system, commonly referred to as a business rules management system.  That system deploys business rules that adjust algorithms embedded in Quicken's underwriting platform that, in turn, impose criteria, such as Quicken's income verification standards, determining whether an application for a loan is approved.  Each business rule deploying Quicken's income verification standards through its business rules management system constitutes a facially neutral practice that actually or predictably results in a significantly adverse or disproportionate impact on persons with disabilities who derive income from disability benefits, including public assistance, including Gomez.

## D.  INJURIES

30.     By reason of Quicken's discriminatory and unlawful lending practices, Gomez has suffered and will in the future suffer injury, including deprivation of the right to medical privacy, loss of housing opportunities, violation of his civil rights, and emotional distress.   Accordingly, Gomez is entitled to compensatory damages.

31.     In doing the acts of which Gomez complains, Quicken acted with reckless disregard of Gomez's federally protected rights.  Accordingly, Gomez is entitled to punitive damages under the Fair Housing Act and Equal Credit Opportunity Act.

32.     There exists an actual case or controversy between the parties regarding Quicken's duties under federal and state fair housing and lending laws. Accordingly, Gomez is entitled to declaratory relief under 28 U.S.C. § 2201.

1      33.    The ongoing nature of Quicken's discrimination constitutes a
2  continuing violation and, unless enjoined by this Court, will result in ongoing and
3  irreparable injury for which Gomez has no adequate remedy at law.  Accordingly,
4  Gomez is entitled to injunctive relief.

5  **V.  <u>CLAIMS</u>**
6  **A.  FIRST CLAIM**
7  **Violation of the Fair Housing Act**

8      34.    Plaintiff realleges and incorporates by reference each paragraph
9  previously alleged in this complaint.

10      35.    Quicken injured Gomez by committing discriminatory housing
11  practices, as listed in paragraph 8, in violation of the Fair Housing Act, 42 U.S.C.
12  §§ 3601 *et seq.*

13  **B.  SECOND CLAIM**
14  **Violation of the Equal Credit Opportunity Act**

15      36.    Plaintiff realleges and incorporates by reference each paragraph
16  previously alleged in this complaint.

17      37.    Quicken injured Gomez by committing discriminatory practices, as
18  listed in paragraph 8, in violation of the Equal Credit Opportunity Act, 15 U.S.C.
19  §§ 1691 et seq.

20  **C.  THIRD CLAIM**
21  **Violation of the Fair Employment and Housing Act**

22      38.    Plaintiff realleges and incorporates by reference each paragraph
23  previously alleged in this complaint.

24      39.    Quicken injured Gomez by committing unlawful practices, as listed in
25  paragraph 8, in violation of the Fair Employment and Housing Act, California
26  Government Code § 12900 *et seq.*
27  //
28  //

## D.  FOURTH CLAIM

### Violation of the Unruh Civil Rights Act

(Cal. Civ. Code §§ 51 *et seq.*)

40.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

41.    Quicken injured Gomez by engaging in discrimination, as described in paragraph 8, in Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.*

## VI.  RELIEF

WHEREFORE, plaintiff prays for relief as follows:

1.    A declaration that defendant's imposition of different lending terms and conditions for persons with disabilities or persons who receive public assistance or both violate the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*, as well as California Civil Code § 51, *et seq.* and California Government Code §§ 12900 *et seq.*;

2.    An order and judgment enjoining defendant, its agents, employees, successors, and all other persons in active concert or participation with it from requiring loan applicants who receive disability benefits to provide proof of current and future disability status to establish future receipt of disability income, or otherwise violating the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*, as well as California Civil Code § 51, *et seq.* and California Government Code §§ 12900 *et seq.*;

3.    An order and judgment enjoining defendant, its agents, employees, successors, and all other persons in active concert or participation with it to develop and implement loan policies, practices, and procedures that do not discriminate against people with disabilities and people who receive public assistance, including Social Security Disability Income;

4.    An award of compensatory damages to plaintiff, according to proof;

5.    An award of statutory damages under the Unruh Civil Rights Act;

6.    An award of punitive damages to plaintiff, according to proof;

7.    An award of attorneys' fees and costs; and,

8.    Such other and further relief as the Court may deem just and proper.

### VII.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, plaintiff hereby demands a trial by jury as to all issues.

Dated:  February 15, 2016.

Respectfully submitted,

DISABILITY RIGHTS LEGAL CENTER
BRANCART & BRANCART

*/s/ Christopher Brancart*
Christopher Brancart
Brancart & Brancart

Attorneys for Plaintiff Ricardo Gomez

-12-

1

**CERTIFICATE OF SERVICE**

2      On February 15, 2016, I served a true and correct copy of the following document(s):

3

4      **SECOND AMENDED COMPLAINT FOLLOWING REMAND; DEMAND FOR JURY TRIAL**

5      upon the following person(s):

6

7      Steven A. Ellis
Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017
*sellis@goodwinprocter.com*

Thomas Hefferon
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
*thefferon@goodwinprocter.com*

8

9      Claire C. Newland
Goodwin Procter LLP
Three Embarcadero Ctr, 24th Floor
San Francisco, CA 94111
*cnewland@goodwinprocter.com*

Anna Rivera
Senior Staff Attorney
Disability Rights Legal Center
256 S. Occidental Blvd., Suite B
Los Angeles, CA 90057
*Anna.Rivera@drlcenter.org*

10

11

12

13

14  |  | **BY HAND DELIVERY**:  By causing such document(s) to be delivered by hand to the above person(s) at the address(es) set forth above. |
    |---|---|
15  |  | **BY MAIL**:  By placing a copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail addressed as set forth above. |
16  |  | **BY THIRD-PARTY COMMERCIAL CARRIER (OVERNIGHT DELIVERY)**:  By delivering a copy thereof to a third-party commercial carrier, addressed as set forth above, for delivery on the next business day. |
17  |  | **BY FACSIMILE**:  By transmitting the above document(s) to the facsimile number(s) of the addressee(s) designated above. |
18  | xx | **BY ELECTRONIC MAIL:** By transmitting the above document(s) to the email address of the person designated above, or by electronically filing the documents on the Court's ECF system. |

19

20

21

22

23      Executed on February 15, 2016, at Loma Mar, California.

24

25      /s/ Christopher Brancart

26

27

28